# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4846 | **DATE** | 4/23/2002 |
| **CASE TITLE** | MIHALKO vs. DALEY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Status hearing held. Jury trial set for September 16, 2002 is stricken and reset to September 17, 2002 at 10:00 a.m. Enter Memorandum Opinion And Order. Defendants' motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | APR 2 4 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | 23 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| LG | courtroom deputy's initials | | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT,
# FOR THE NORTHER DISTRICT OF ILLINOIS,
# EASTERN DIVISION

|  |  |
|---|---|
| HARRY R. MIHALKO, ) | |
| ) | |
| Plaintiff, ) | Case No. 01 C 4846 |
| ) | |
| v. ) | The Honorable John W. Darrah |
| ) | |
| BURNHAM POLICE OFFICER ) | |
| J. DALEY, STAR #101; and the ) | |
| VILLAGE OF BURNHAM, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Harry R. Mihalko ("Plaintiff"), filed a five-count complaint against Defendants, Burnham Police Officer John Daley ("Daley") and the Village of Burnham ("the Village") (collectively "Defendants"), alleging false arrest, detention, malicious prosecution, and use of excessive force in violation of 42 U.S.C. § 1983 (2002) by Daley; a state law claim for malicious prosecution against Daley; and a state law claim against the Village under 745 Ill. Comp. Stat. 10/9-102 (2002). Defendants move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment.

For the reasons that follow, Defendants' Motion for Summary Judgment is denied.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes

-1-

of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff is a forty-six-year-old United States citizen who resides in Illinois. (Def.'s 56.1 ¶ 1.) Daley is a person under § 1983 and a police officer employed by the Village. (Def.'s 56.1 ¶ 2.) Daley became a police officer for the Village in 1980. (Def.'s 56.1 ¶ 29.) The Village is a municipal

corporation duly incorporated under the laws of Illinois. (Def.'s 56.1 ¶ 3.)

A local ordinance provides that "[i]t shall be unlawful for the holder of [certain licenses] to sell or offer for sale at retail any alcoholic liquor after the hour of 4:00 o'clock [sic] a.m. and before the hour of 8:00 o'clock [sic] a.m. on any day." (Def.'s 56.1 Ex. C, Burnham, Ill., Ordinance Licensing and Regulating the Sale at Retail of Alcoholic Liquor in the Village of Burnham, Cook County, Illinois, No. 93-O-008 § 20(D) (Dec. 9, 1993).) The ordinance further provides that "[a]ll patrons and customers shall leave the premises not later than the closing hours herein established." (Def.'s 56.1 Ex. C § 20(J).)

On Saturday, April 29, 2000, Plaintiff was a patron at the Little Brown Jug Tavern in Burnham, Illinois. (Def.'s 56.1 ¶ 8.) Plaintiff understood that the bars in Burnham must close at 4:00 a.m. and that police officers show up at the bars at that time to ensure they are closed. (Def.'s 56.1 ¶ 11.)

On April 30, 2000, Daley was on patrol. (Def.'s 56.1 ¶ 31.) At closing time, Daley parked his squad car directly in front of the Little Brown Jug and exited the car. (Def.'s 56.1 ¶ 35.) Early in the morning on Sunday, April 30, 2000, at around 4:00 a.m., as Plaintiff was leaving the Little Brown Jug, he saw Daley standing outside blocking the doorway. (Def.'s 56.1 ¶ 17.) Plaintiff sidestepped Daley. (Def.'s 56.1 ¶ 17; Pl.'s 56.1 ¶ 22.) Plaintiff does not believe that he made physical contact with Daley. (Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶¶ 19, 20.) However, Plaintiff believes that his clothing may have brushed against Daley. (Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 19, 20.) Joe Wacker, a Little Brown Jug employee, testified that he saw Plaintiff brush up against Daley when Plaintiff turned to avoid the officer. (Def.'s 56.1 ¶ 63.) Daley testified that Plaintiff came flying out of the Little Brown Jug and shoved Daley to the wall, hitting Daley's torso. (Def.'s 56.1 ¶ 37.)

Plaintiff testified that he was walking past Daley when Daley asked him to stop and grabbed his arm. (Def.'s 56.1 ¶ 19.) However, Daley testified that he told Plaintiff to stop, but Plaintiff continued to walk away. (Def.'s 56.1 ¶ 38.) Daley testified that, because Plaintiff continued to walk away, he grabbed Plaintiff by the belt. (Def.'s 56.1 ¶ 42.) Daley testified that Plaintiff resisted; flailing his arms, pulling away, and dragging Daley toward the parking lot. (Def.'s 56.1 ¶ 43.)

Daley wanted to question Plaintiff about where Plaintiff was going and what was going on inside the bar. (Def.'s 56.1 ¶ 40.) Daley believed that Plaintiff may have committed a crime by being on the premises of a bar after hours. (Def.'s 56.1 ¶ 41.) Daley had no plans to arrest Plaintiff at that time. (Def.'s 56.1 ¶ 41.)

The parties agree that Plaintiff stopped, and Daley had Plaintiff put his hands against the wall while he frisked Plaintiff. (Def.'s 56.1 ¶ 20; Pl.'s 56.1 ¶ 34.) Plaintiff testified that while Daley frisked him, Daley used profane language. (Def.'s 56.1 ¶ 21.) When the frisk was over, Plaintiff assumed he was free to leave and took a few steps away toward the parking lot. (Def.'s 56.1 ¶ 22.) While Daley did not tell Plaintiff that Plaintiff was free to leave, Daley also did not tell Plaintiff that he was under arrest. (Def.'s 56.1 ¶ 22; Pl.'s 56.1 ¶ 26.) Daley testified that Plaintiff was belligerent and resisted Daley's attempts to detain or handcuff him by flailing his arms, pulling away from Daley, and swinging his fists at Daley's head and face. (Def.'s 56.1 ¶¶ 43, 45, 46.) When Plaintiff began walking away, Daley then tackled Plaintiff and handcuffed him on the ground. (Def.'s 56.1 ¶ 23.)

Wacker testified that he saw Daley frisk Plaintiff against the wall. (Def.'s 56.1 ¶ 66.) The next thing Wacker saw was Plaintiff walking toward the front of the building when Daley tackled Plaintiff from behind and handcuffed him. (Def.'s 56.1 ¶¶ 67, 68.) Wacker testified that he saw

-4-

Plaintiff struggling with Daley but did not see Plaintiff bite Daley. (Def.'s 56.1 ¶ 69.)

Daley had hit his panic button because he feared for his safety. (Def.'s 56.1 ¶ 51.) The chief arrived with several other squad cars from Calumet City. (Def.'s 56.1 ¶ 52.) Another officer transported Plaintiff to the Burnham Police Department, where he was held in a cell until the next day when he was released on bond. (Def.'s 56.1 ¶ 26.)

Plaintiff sustained massive trauma to his right arm, severe sprain to the right wrist, bruises on his leg and knee, a broken capillary in his eye, a twisted knee, pain to his left ribs, numerous abrasions, torn clothing, and was diagnosed with bursitis to his elbow a week later. (Pl.'s 56.1 ¶ 85.)

Plaintiff was charged with battery for physical contact of an insulting nature and resisting arrest for battery. (Def.'s 56.1 ¶ 70; Pl.'s 56.1 Ex. B.) Plaintiff was acquitted of the charges in a bench trial. (Def.'s 56.1 ¶ 70.)

## DISCUSSION

Defendants argue that summary judgment is appropriate because (1) when Plaintiff resisted Daley's attempts at interrogation and attempted to strike Daley, Daley had probable cause to arrest Plaintiff[1]; (2) qualified immunity bars Plaintiff's claims since Daley had arguable probable cause to

---

[1]Defendants devote much of their memorandum in support of their motion for summary judgment to a discussion of the legality of Daley's investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). Daley testified that he needed to conduct a *Terry* stop because Plaintiff may have committed a crime by being on the premises of the tavern after closing time. While the statute clearly makes the *sale* of alcohol in a tavern after 4:00 a.m. a crime, it is not clear that a customer's mere presence in a bar is a crime. The ordinance states that all patrons are to leave the premises at closing time but not that it is unlawful to remain on the premises after closing time. In contrast, the ordinance expressly provides that "*[i]t shall be unlawful* for any person to whom the sale, gift or delivery of any alcoholic liquor is prohibited because of age to purchase or accept a gift of such alcoholic liquor or to have such alcoholic liquor in his possession." (Def.'s 56.1 Ex. C at § 24(B) (emphasis added).) Moreover, even if, as Defendants argue, it is a crime to be on the premises of a bar after closing time, Defendant did not need to question Plaintiff to determine whether a crime had been committed. Daley testified that he saw Plaintiff in the bar.

arrest Plaintiff. The criminal complaints charge Plaintiff with battery and resisting a peace officer. The complaint for battery states that Plaintiff, "without legal justification, knowingly made physical contact of an insulting nature with Officer J. Daley by pushing officer [sic] Daley away from the doorway of the Little Brown Jug Tavern." (Pl.'s 56.1 Ex. B.) The complaint for resisting a peace officer states that Plaintiff:

> knowingly obstructed the performance of J. Daley of an authorized act within his official capacity, being the arrest of [Plaintiff] for battery, knowing J. Daley to be a peace officer engaged in the execution of his official duties, in that he pushed[,] kicked, attempted to hit and bite J. Daley and refused to be handcuffed in an effort to defeat the arrest.

(Pl.'s 56.1 Ex. B.)

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless arrests in public places are permitted under the Fourth Amendment if the arresting officer has probable cause. *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) (citing *United States v. Watson*, 423 U.S. 411, 417-24 (1976)). Probable cause for an arrest exists if the officer "'reasonably believe[s], in light of the facts and circumstances within [the officer's] knowledge at the time of the arrest, that the suspect had committed or was committing an offense.'" *United States. v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001) (quoting *United States v. Hayes*, 236 F.3d 891, 894 (7th Cir. 2001)). Police officers may draw reasonable inferences based on their training and experiences in determining whether suspicious circumstances rise to the level of

---

Daley would only have to look at a clock to determine whether it was after closing time (4:00 a.m.).

    Also, Plaintiff was not arrested for allegedly evading Daley's attempts to question him. As noted in this opinion, the criminal complaints filed against Plaintiff charge him with resisting arrest for the offense of battery and the offense of battery. Therefore, this Court's inquiry will be focused on the events and legality of the arrest and not the purported *Terry* stop.

-6-

probable cause. *Carrillo*, 269 F.3d at 766 (citing *United States v. Faison*, 195 F.3d 890, 893 (7th Cir. 1999)). Whether probable cause exists "turns on the information known to the officers at the moment the arrest [was] made, not on subsequently received information." *Carrillo*, 269 F.3d at 766 (citing *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000)). The determination of the existence of probable cause is based on the totality of the circumstances. *Carrillo*, 269 F.3d at 766-67 (citing *United States v. Scott*, 19 F.3d 1238, 1242 (7th Cir. 1994)).

> If facts sufficient to create probable cause are undisputed, probable cause is a question of law. . . . A dispute concerning some facts relevant to determining the existence of probable cause does not preclude a finding of probable cause, so long as the finding survives after adopting the plaintiff's version of disputed facts supported by the record.

*Abrams v. Walker*, 165 F. Supp. 2d 762, 766 (N.D. Ill. 2001) (internal citations omitted). Probable cause is an absolute defense to § 1983 actions for malicious prosecution, false arrest, and false imprisonment because there has been no constitutional deprivation. *Myatt v. City of Chicago*, 816 F. Supp. 1259, 1266 (N.D. Ill. 1992) (citing *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989)).

Qualified immunity shields police officers "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sparing*, 266 F.3d at 687 (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). The defense of qualified immunity is not available to "'the plainly incompetent or those who knowingly violate the law.'" *Sparing*, 266 F.3d at 688 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Daley is entitled to qualified immunity for purposes of summary judgment, and Plaintiff's § 1983 action against him barred, if a reasonable officer could have believed that, in light of the facts

and circumstances within Daley's knowledge at the time of the arrest and clearly established law, Plaintiff had committed or was committing an offense. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). A reasonable but mistaken belief that probable cause exists is sufficient for entitlement to qualified immunity. *Hunter*, 502 U.S. at 227. In cases involving the issue of whether probable cause existed to support an arrest, "'the case should not be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed." *McDonnell v. Cournia*, 990 F.2d 963, 968 (7th Cir. 1993) (quoting *Cross v. City of Des Moines*, 965 F.2d 629, 632 (8th Cir. 1992)). The question of immunity is one for the court. *Hunter*, 502 U.S. at 228.

"Federal law asks only whether the officers had probable cause to believe that the predicate offense, as the state has defined it, has been committed." *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001) (citing *Richardson v. Bonds*, 860 F.2d 1427, 1432 n.4 (7th Cir. 1988)).

Plaintiff bears the burden of defeating an assertion of qualified immunity. *Sparing*, 166 F.3d at 688 (citations omitted). "When presented with a defense of qualified immunity, courts must (1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing*, 266 F.3d at 688 (citations omitted). The right to be free from arrest without probable cause is well-settled.

However, as noted above, summary judgment on the issue of probable cause is inappropriate if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. *See Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999).

A person resists a peace officer when he or she "knowingly resists or obstructs the

-8-

performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity." 720 Ill. Comp. Stat 5/31-1(a) (2002). Resisting a peace officer requires "some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party avoid arrest." *People v. Raby*, 40 Ill. 2d 392, 399 (1968). An act of physical resistance is necessary; silence "in the face of requests for identifying information, or even supplying false information, is not enough to constitute obstruction." *Williams*, 269 F.3d at 782.

A person commits battery when he or she intentionally or knowingly, without legal justification and by any means, causes bodily harm to an individual or makes physical contact of an insulting or provoking nature. 720 Ill. Comp. Stat. 5/12-3 (2002).

In the instant case, there is a factual dispute as to whether Plaintiff engaged in the physical conduct, to which Daley testified, in response to Daley's performance of an authorized act, the arrest for battery, and whether Plaintiff had committed or was committing the crime of battery. The criminal complaint states that Plaintiff committed a battery by pushing Daley away from the door and that this physical contact was of an insulting nature.

Daley testified that Plaintiff pushed him upon exiting the Little Brown Jug and that, when he attempted to stop Plaintiff for questioning, Plaintiff continued walking away. Daley also testified, however, that, at that time, he had no intention of arresting Plaintiff for any crime. Daley further testified that, after grabbing Plaintiff's belt, he was able to stop Plaintiff and frisk him but that, after the frisk was over, Plaintiff immediately began walking away. When Daley tried to stop Plaintiff, Plaintiff became belligerent, trying to swing his fists at Daley's head and face.

Plaintiff, on the other hand, testified that he never pushed Daley into the wall but, at most,

brushed Daley with his clothing as he stepped past Daley. Wacker also testified that Plaintiff brushed up against Daley when Plaintiff turned to avoid the officer as Plaintiff was exiting the tavern. Plaintiff also testified that he cooperated with Daley as soon as he was asked to stop. Moreover, Plaintiff testified that he walked away from Daley because he thought the officer was through with him. Furthermore, the parties do not dispute that Daley was in uniform and did not tell Plaintiff that Plaintiff was free to leave or that Plaintiff was not free to leave. There is also no dispute that Daley never told Plaintiff that he was under arrest prior to the alleged struggle.

The factual dispute as to the events of April 30, 2000 precludes summary judgment in favor of Daley on qualified immunity grounds because the determination of whether a reasonable officer in Daley's position would have believed he had probable cause to arrest Plaintiff for battery depends on whether one believes his version of the events on that night or Plaintiff's. Furthermore, no finding of arguable or actual probable cause could survive after adopting Plaintiff's version of the facts. *Abrams*, 165 F. Supp. 2d at 766. Under Plaintiff's version of the facts, an unintentional brushing against someone with one's clothing could not be considered to be an intentional or knowingly insulting or provoking physical contact. Moreover, Plaintiff testified that he did not strike Daley. Thus, there can be no finding of probable cause as a matter of law. There are issues of material fact as to whether Plaintiff committed a battery against Daley, resisted arrest, and whether probable cause for the arrest existed; and, therefore, summary judgment is denied on Plaintiff's claim for false arrest (Count I).

To prove a claim for malicious prosecution under § 1983, Plaintiff must prove that (1) he satisfied the requirements of state law cause of action for malicious prosecution, (2) the malicious prosecution was committed by state actors, and (3) he was deprived of liberty. *Abrams*, 165 F. Supp.

2d at 766. Under Illinois law, Plaintiff can establish malicious prosecution occurred if he can show that (1) he was subjected to judicial proceedings for which no probable cause existed, (2) the proceedings were instituted or continued maliciously, (3) the proceedings terminated in his favor, and (4) there was an injury. *Abrams*, 165 F. Supp. 2d at 766.

There are genuine issues of material fact from which a rational jury could conclude that Plaintiff had been maliciously prosecuted. As was noted above, there are genuine issues of material fact as to whether probable cause existed. It is undisputed that Plaintiff was acquitted of battery and resisting a peace officer. There is a genuine issue of material fact as to whether Daley acted improperly in filing criminal complaints for battery and resisting a peace officer against Plaintiff and in testifying as he did at Plaintiff's trial. Both Plaintiff and Wacker testified that Plaintiff did not push or shove Daley and that Plaintiff did not resist Daley's attempts to handcuff him. Moreover, the undisputed facts establish that Plaintiff was arrested, held for seven hours, and was required to defend himself in the criminal proceeding from conviction and a possible period of incarceration, incurring attorney's fees. Under Illinois law, "if the malicious prosecution is based on the institution of criminal proceedings, no showing of special injury is required." *Voga v. Nelson*, 115 Ill. App. 3d 679, 682 (1983). Therefore, summary judgment is denied on Plaintiff's state law claim for malicious prosecution (Count IV).

There are genuine issues of material fact as to whether Plaintiff suffered a deprivation of liberty of a constitutional magnitude. *Kies v. City of Aurora*, 156 F. Supp. 2d 970, 979 (N.D. Ill. 2001) (citation omitted). As was noted above, Plaintiff was arrested, detained for seven hours, tried for battery and resisting arrest and required to defend the charges. Therefore, summary judgment is denied on Plaintiff's federal claim for malicious prosecution (Count II).

Finally, summary judgment is inappropriate on Plaintiff's excessive force claim under § 1983. The right to make an arrest involves the right to use some degree of physical coercion or threat of physical coercion to effect it. *Terry*, 392 U.S. at 22-27. However, the force used to effect an arrest must be objectively reasonable under the totality of the circumstances confronting the officer. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997). In determining the reasonableness of the force used, the following factors are considered: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, there are issues of material fact as to whether Daley's use of force was objectively reasonable in light of the circumstances confronting him. Plaintiff and Daley have two very different versions of the events of April 30, 2000. The reasonableness of Daley's use of force turns on whether Plaintiff was violently struggling with Daley. There is a factual dispute as to whether Plaintiff attempted to kick, bite, push and hit Daley. Therefore, summary judgment on Plaintiff's claim for excessive force (Count III) is denied.

Count V[2] states a claim against the Village under 745 Ill. Comp. Stat. 10/9-102 (2002). Section 9-102 provides that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." In light of the determinations above, summary judgment is denied on Count V of the complaint.

---

[2] In the complaint, this count is also styled "Count IV"; but the Court considers this a typographical error and will refer to this count as "Count V".

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

*[signature]*

John W. Darrah, Judge
United States District Court

Date: April 23, 2002